UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-----------------------------------------------------------X

Kendra (HEWITT) Morgan, Darlene WHALEY
and Ethel L. Wright

    Individually and as
    Class Representative,
    Plaintiff,

              v.

THE METROPOLITAN DISTRICT
COMMISSION,
Defendant.

Civil Action No. 3:01 CV 2037 (MRK)

Memorandum in Support of Motion
for Order Determining That Action
Proceed as Class Action

-----------------------------------------------------------X

## I.    INTRODUCTION

The Plaintiffs submit the following memorandum and the attached exhibits in support of their motion for class certification. Plaintiffs submit that they satisfy all of the prerequisites for class certification set forth in Rule 23 (a) of the Federal Rules of Civil Procedure and, in addition, fall within two of the categories set forth in Rule 23 (b). For the reasons set forth in this memorandum, the Court should grant the Plaintiffs' motion.

## II.    STANDARD FOR MOTION FOR CLASS CERTIFICATION

It is well settled that the party moving for class certification, in this case the Plaintiffs, has the burden of proving that the requirements for class certification are satisfied. See, e.g., Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1186 (9th Cir. 2001), opinion amended and superseded on denial of reh'g, 273 F.3d 1266 (9th Cir. 2001). In order for a Court to grant a motion for class certification pursuant to Rule 23, the movant must demonstrate that

1

all four prerequisites of subsection (a) are met and that the case falls within at least one of the categories described in subsection (b). Id.; Eisen v. Carlisle and Jacquelin, 391 F.2d 555, 561 (2d Cir. 1968), on remand, 50 F.R.D. 471. The Court should keep in mind, though, that "a motion for class certification is not an occasion for examination of the merits of the case." Caridad v. Metro-North Commuter Railroad, 191 F.3d 283, 291 (2d Cir. 1999), cert. denied, 529 U.S. 1107, 120 S. Ct. 1959, 146 L. Ed. 2d 791 (2000) (although statistical data presented by proponent of class certification may ultimately prove unpersuasive on merits, it may still satisfactorily demonstrate common questions of fact under Rule 23 (a) (2)).

"Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility in application in order to best serve the ends of justice and promote judicial economy.... Moreover, if an error is to be made with respect to class certification, it is to be in favor and not against the maintenance of a class action." (Citations omitted; internal quotation marks omitted.) Sharif by Salahuddin v. New York State Educ. Dept., 127 F.R.D. 84, 87 (S.D.N.Y. 1989); see also Marisol A. by Forbes v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997) ("A reviewing court must exercise even greater deference when the district court has certified a class than when it has declined to do so.").

### III. LAW AND ARGUMENT

#### A. Class Description

The description of the proposed class in the present case is all African-American persons or persons of color (hereinafter "minority employees") employed by Defendant Metropolitan District Commission ("MDC") in non-managerial positions at any time from October 1998 to the present, who are subject to the MDC's employment and human resources policies and practices, including, but not limited to, current or former employees. The named

2

Plaintiffs believe that this description is sufficiently specific so that members of the proposed class can easily be ascertained while at the same time not being so broad as to bring within the description persons with conflicting interests as far as the outcome of the present litigation. See, generally, Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 624 n.1 (5th Cir. 1999), cert. denied, 528 U.S. 1159, 120 S. Ct. 1169, 145 L. Ed. 2d 1078 (2000) (class of employees alleging illness caused by defective ventilation system is not deficient because allegation of defective system or injury from it has yet to be proven on merits); Berman v. Narragansett Racing Ass'n, 414 F.2d 311, 317 (1st Cir. 1969), cert. denied, 396 U.S. 1037, 90 S. Ct. 682, 24 L. Ed. 2d 681 (1970) (class of racing horse owners who win purses adequately defined as members could be determined from track records).

### B.     Numerosity – Rule 23 (a) (1)

The first requirement for class certification of Rule 23 (a) is that "the class is so numerous that joinder of all members is impracticable...." The Court may note that Rule 23 (a) (1) does not establish a bright-line rule as to the specific number of class members that will satisfy this requirement. In the present case, the proposed class would include more than one hundred present and former African-American employees of the MDC. A list of what should be a majority of the members of the class has been created from the discovery materials provided by the Defendant, and it shows the number of African-American employees of the MDC that fall within the class description are far in excess of one hundred. (Affidavit of Stuart Brown, Exhibit A-1). It seems self-evident that joinder of such a large number of individuals would be impracticable.

"Impracticable does not mean impossible." Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993). "Determination of practicability depends on all the circumstances surrounding a

case, not on mere numbers.... Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." (Citation omitted.) Id., 936.

The Second Circuit Court of Appeals also held in Robidoux that numerosity does not require an exact estimate of class size, but only a reasonable estimate. Id., 935 ("Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement."). The Court did note, however, that "A leading treatise concludes, based on prevailing precedent, that the difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable." Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993) (citing 1 Herbert B. Newberg, Newberg on Class Actions: A Manual for Group Litigation at Federal and State Levels, § 3.05, at 141-42 (2d ed. 1985)). The Court went on to state, "Consolidating in a class action what could be over 100 individual suits serves judicial economy.... An injunction requiring the Department to comply with statutory deadlines would affect all potential class members, and individual suits could lead to potentially inconsistent results." Id.; see also Marcera v. Chinlund, 595 F.2d 1231, 1238 (2d Cir. 1979) ("There is little doubt that the 42 sheriffs constitute a group sufficiently large to meet the numerosity requirement of Rule 23 (a) (1).").

The Court may also wish to consider the following cases from other Circuits with regard to the issue of numerosity. The Third Circuit Court of Appeals in Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001), cert. denied, 536 U.S. 958, 122 S. Ct. 2661, 153 L. Ed. 2d 836 (2002), noted that there is no minimum number required under Rule 23 (a) (1) but more

4

than forty members is generally sufficient. In <u>Mullen v. Treasure Chest Casino, LLC</u>, supra, 186 F.3d 624-25, the Fifth Circuit Court of Appeals held that a class of 100 to 150 members would be sufficient, and, furthermore, noted that one of the additional factors that could be considered in the finding of numerosity is the potential reluctance of current employees to sue individually for fear of retaliation.

The class in the present case would encompass more than one hundred present and former African-American employees of the MDC. Consolidating in a class action what could be over 100 individual suits would serve judicial economy. The Court should also consider the fact that the Plaintiffs in their Complaint request declaratory and prospective injunctive relief which would affect the rights of class members. For example, in their Prayer for Relief, the Plaintiffs have requested that the Court "b. Enter a judgment that Defendant's acts and practices as set forth herein are in violation of the laws of the United States; c. Enter preliminary and permanent relief enjoining the discriminatory conduct necessary to end Defendant's discriminatory practices and prevent current and future harm to Plaintiffs and the Class; ... h. Enter a judgment that Defendant shall hire an experienced Employee Ombudsman with independence to investigate and raise issues of employee mistreatment while protecting the employee's identity. i. Enter a judgment prohibiting all MDC hiring without job posting. J. Enter a judgment that the Affirmative Action Officer not share his duties as a Personnel Department employee. k. Enter a judgment that Defendant shall employ an independent team of experts to review present discriminatory practices and policies, and recommend for implementation policies and procedures as needed to guarantee full compliance with anti-discrimination laws." (See Complaint, Prayer for Relief). Thus, the Plaintiffs have proven the facts necessary to satisfy the numerosity requirement of Rule 23 (a) (1). Finally, the reluctance

5

of members of the class to bring similar complaints for fear of retaliation and the difficulty of members in finding legal counsel willing to bring such suits both should lead the Court to the determination that the numerosity requirement of Rule 23 (a) (1) is satisfied. (See Affidavits, collectively Exhibit C).

Given the presence of all these factors in this case, the numerosity requirement of Rule 23 (a) (1) has been met.

### C. Questions of Law or Fact Common to the Class – Rule 23 (a) (2)

The second requirement of Rule 23 (a) is that "there are questions of law or fact common to the class...." The Plaintiffs claim that the MDC's supervisors and management level employees have treated African-American employees as a group differently than Caucasian employees. The Plaintiffs claim that the MDC has permitted a climate of discrimination to exist and that the MDC has failed to fulfill its legal obligations to minority employees, namely the MDC's federal affirmative action requirements. (See generally Levy & Droney Report, excerpt attached as Exhibit D, pp. 28-29).[1] For example, the most recent version of the MDC's affirmative action plan is dated April 1, 1996 – March 31, 1997. Rick Gomez, the MDC's current affirmative action officer, was under the impression that the MDC was not subject to federal affirmative action requirements. (See Gomez Deposition, excerpt attached as Exhibit E, pp. 11-15). The Plaintiffs can demonstrate that the MDC does receive in excess of $50,000 per year in grants from the federal government, and, therefore, the MDC

---

[1] "Also absent from the MDC's policy documentation is an updated Affirmative Action Plan. The first MDC Affirmative Action Plan we were able to locate is dated 1996. The MDC has not sought to review or update its Affirmative Action Plan since 1997. It further has not utilized Affirmative Action goals in reviewing hiring and/or promotional practices. Other than having an outdated policy, the District has done little to ensure Affirmative Action goals are in keeping with the organization's legal obligations. Recall the MDC is, for purposes of the law a 'municipality'. This is significant. An Affirmative Action Policy, updated and correct, which includes the goals for the corporation provides a benchmark for reviewing hiring, retention and promotion practices of protected classes." (Levy & Droney Report, Exhibit D, pp. 28-29).

should be required to be in compliance with affirmative action obligations created under federal law.

The class members may each be able to point to individual instances where they were affected in one way or another by the MDC's discriminatory conduct; see, generally, Complaint; but the question of whether such conduct was the result of a company-wide pattern of discrimination is common to all. See, generally, Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998) (common nucleus of operative fact will satisfy requirement of Rule 23 (a) (2); moreover "factual variations among class members' grievances do not defeat a class action"); Senter v. General Motors Corp., 532 F.2d 511, 524 (6th Cir.) (granting class status to Title VII action on behalf of black employees denied promotion, although it was "manifest that every decision to hire, fire or discharge an employee may involve individual considerations"), cert. denied, 429 U.S. 870, 97 S. Ct. 182, 50 L. Ed. 2d 150 (1976); Cullen v. New York State Civil Service Commission, 435 F. Supp. 546, 559 (E.D.N.Y. 1977), appeal dismissed, 566 F.2d 846; Tunin v. Ward, 78 F.R.D. 59, 66 (S.D.N.Y. 1977). Furthermore, the question of the legal obligations under federal law pertaining to affirmative action is one whose answer will have an effect on all members of the class.

"Rule 23 (a) (2) requires only that questions of law or fact be shared by the prospective class. The rule does not require that all questions of law or fact are common; it only requires that common questions predominate over individual ones." Sharif by Salahuddin v. New York State Educ. Dept., 127 F.R.D. 84, 88 (S.D.N.Y. 1989). "The crux of both [the commonality and typicality] requirements is to ensure that maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." (Internal quotation

7

marks omitted.) <u>Marisol A. by Forbes v. Giuliani</u>, 126 F.3d 372, 376 (2d Cir. 1997).[2] "[C]ommonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." <u>Armstrong v. Davis</u>, 275 F.3d 849, 868 (9th Cir. 2001), cert. denied, 537 U.S. 812, 123 S. Ct. 72, 154 L. Ed. 2d 14 (2002); see, generally, <u>Kirkland v. New York State Dept. of Correctional Services</u>, 520 F.2d 420, 427 (2d Cir. 1975) ("the question of whether [a civil service examination] discriminated against minority candidates was the question of law common to the class"). In some cases, an alleged common course of conduct is sufficient to satisfy the common question requirement for class certification. <u>Garfinkel v. Memory Metals, Inc.</u>, 695 F. Supp. 1397, 1402 (D. Conn. 1988).

The Court may also wish to consider the following cases from other Circuits that have found the commonality requirement satisfied: "[T]he district court was correct in concluding that the Fed.R.Civ.P. 23 (a) (2) requirement of common issues of law or fact was met by the existence of the issue 'whether the USPS has discriminated against black employees in the denial of promotions and promotion opportunities by means of detailing, written tests, discriminatorily applied selection procedures, and illegal and discriminatory discipline, among other things." <u>Chisholm v. United States Postal Service</u>, 665 F.2d 482, 492 (4th Cir. 1981). "Allegations of similar discriminatory employment practices, such as the use of highly subjective personnel processes that operate to discriminate, satisfy the commonality and typicality requirements of Rule 23 (a)." <u>Shipes v. Trinity Industries</u>, 987 F.2d 311, 316 (5th Cir. 1993) (involving Title VII action by black former employee). See, generally, <u>Carpenter v. Stephen F. Austin State University</u>, 706 F.2d 608, 617 (5th Cir. 1983) (finding named plaintiffs

---

[2]The Court should note that, as in the case of the motion for class certification in general, a District Court should not consider the merits of the Plaintiff's claims when deciding whether the commonality requirement is met

8

in action alleging race and sex discrimination in employment satisfied commonality and typicality requirements).

In the present case, the commonality requirement of Rule 23 (a) (2) is demonstrated by the allegations of the Complaint. The Complaint asserts that there is a pattern and practice of race discrimination at the MDC which manifests itself in discrimination in evaluations, compensation and promotions. Furthermore, the question of whether the Defendant is in compliance with its federal affirmative action requirements is a question of law common to the entire class.[3]

---

[3] The Plaintiffs have not included in the present argument each and every question of law or fact common to the class members that they seek to prove at trial. Should the Court require further instances of common questions of law or fact before it is satisfied the Rule 23 (a) (2) has been met, the Plaintiffs ask the Court to consider paragraph 17 within the Class Action Allegations portion of the Complaint:
"There are questions of law and fact common to the Class that predominate over any questions affecting only individuals. Among these common questions are:
a.   Whether MDC's actions violated federal civil rights laws, in particular 42 U.S.C. § 1981;
b.   Whether MDC maintains written and unwritten policies and/or practices for performing evaluations that discriminate against the Class on the basis of race;
c.   Whether there are statistically significant disparities between the evaluation scores of African-American employees and the evaluation scores of Caucasian employees, sufficient to permit an inference of intentional discrimination;
d.   Whether MDC maintains written and unwritten policies and/or practices for determining compensation that discriminate against the Class on the basis of race;
e.   Whether there are statistically significant disparities between the compensation awarded to African-American employees and the compensation awarded to similarly situated Caucasian employees, sufficient to permit an inference of intentional discrimination;
f.   Whether MDC maintains a practice of filling positions without following its written policies on posting for positions;
g.   Whether MDC maintains written and unwritten policies and/or practices for determining promotions that discriminate against the Class on the basis of race;
h.   Whether there are statistically significant disparities between the promotions awarded to African-American employees and the promotions awarded to similarly-situated Caucasian employees, and whether pay practices including retroactive pay practices show statistically significant disparities between classes of employees sufficient to permit an inference of intentional discrimination.
i.   If discrimination is found, whether injunctive relief, including changes to Company-wide written and unwritten policies and practices, is needed to adequately remedy past and present discrimination against the Class and prevent future discrimination against the Class;
j.   Whether MDC's conduct constitutes a pattern and practice of discrimination against the Class justifying an award of lost wages, benefits or other similarly relief to individual members of the Class;
k.   Whether MDC's conduct constitutes a pattern and practice of discrimination against the Class justifying an award of compensatory and punitive damages to individual members of the Class."

### D. <u>Class Representatives Claims Must Be Typical – Rule 23 (a) (3)</u>

The third requirement of Rule 23 (a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class...." According to the Fifth Circuit Court of Appeals, "The test for typicality, like the test for commonality, is not demanding." <u>Lightbourn v. County of El Paso</u>, supra, 118 F.3d 426. "Plaintiffs' claims satisfy the typicality requirement if they arise from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory.... Under such circumstances, by advancing their own interests, plaintiffs will advance the interests of the class." (Citations omitted; internal quotation marks omitted.) <u>Sharif by Salahuddin v. New York State Educ. Dept.</u>, 127 F.R.D. 84, 87 (S.D.N.Y. 1989). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." <u>Robidoux v. Celani</u>, 987 F.2d 931, 936-37 (2d Cir. 1993).

Typicality "requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." (Internal quotation marks omitted). <u>Caridad v. Metro-North Commuter Railroad</u>, 191 F.3d 283, 293 (2d Cir. 1999). The Court should note that the Second Circuit in <u>Caridad</u> analyzed the plaintiffs' claims of racial discrimination in employment and concluded that the determination of whether the employer's policies were discriminatory was as crucial to the claims of the proposed class representatives as it was to the claims of the proposed class. <u>Id</u>.

The same conclusion is appropriate in the present case given the named Plaintiffs' individual allegations and their relationship with the allegations of the class as a whole.

"Typicality refers to the nature of the claim of the class representatives and not to the specific facts from which the claim arose or relief is sought. The proper inquiry is whether other members of the class have the same or similar injury, whether the action is based on conduct not special or unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Civic Ass'n of Deaf of NYC v. Giuliani, 915 F. Supp. 622, 633 (S.D.N.Y. 1996) (quoting Dura-Bilt Corp. v. Chase Manhattan Corp., 89 F.R.D. 87, 99 (S.D.N.Y. 1981)). "[T]he main purpose of the typicality requirement ... is to aid the court in its duty to protect absent class members." (Internal quotation marks omitted.) McKernan v. United Technologies Corp., 120 F.R.D. 452, 455 (D. Conn. 1988).

The Court should begin its analysis of the typicality portion of the class action requirements by examining common questions of law and fact listed in the "Class Action Allegations" set forth in the Complaint. See Note 3, supra. Each of the named Plaintiffs have claims which fall within a number of the common questions. By bringing their claims against the Defendant in one action, they will be providing the evidence necessary to prove the claims of the entire class. For example, Kendra Morgan (formerly Kendra Hewitt) seeks to prove that she was denied an appropriate promotion; she was lied to, harassed and her reputation defamed; she was limited in the training opportunities provided to her; she was intentionally excluded from staff meetings; and she was denied full retroactive pay upon her promotion despite the routine grant of such retroactive pay to Caucasian employees. Complaint, ¶ 7. Darlene Whaley seeks to prove that a promotion she sought was given to a less-qualified Caucasian candidate; she was unreasonably hindered in obtaining an upgrade to her existing

11

position; and she was denied retroactive pay when she eventually was awarded the upgrade. Complaint, ¶ 8. Ethel L. Wright seeks to prove that she was told she was not qualified for particular positions but received no explanation of how she could become qualified in the future; when a position was again vacant, several obstacles were placed in her way specifically to prevent her from obtaining the position; she was denied the opportunity to serve in an acting capacity within a vacant position to which she was next in line, while Caucasian employees routinely serve in an acting capacity within vacant positions. Complaint, ¶ 9.

In order for their claims to succeed, the named Plaintiffs seek to prove that the Defendant's actions towards them are merely symptoms of a pattern and practice of discrimination against African-American employees in general. See Complaint, ¶¶ 3-4. The Court should determine, therefore, that the named Plaintiffs' claims meet the typicality requirement of Rule 23 (a) (3).

### E. Representatives Will Fairly Protect the Class – 23 (a) (4)

The fourth, and final, requirement of Rule 23 (a) is that "the representative parties will fairly and adequately protect the interests of the class." In the past, our federal courts have stated that to satisfy the requirement of Rule 23 (a) (4), "plaintiffs must satisfy both prongs of a two-pronged test to qualify as adequate representatives. The plaintiffs must show, first, that there is an absence of conflict and antagonistic interests between them and the class members, and second, that the plaintiffs' counsel is qualified experienced and capable." (Internal quotation marks omitted.) Civic Ass'n of Deaf of NYC v. Giuliani, 915 F. Supp. 622, 633 (S.D.N.Y. 1996); see also In re Joint Eastern & Southern Dist. Asbestos Lit., 78 F.3d 764, 778 (2d Cir. 1996). With the addition of Rule 23 (g), which addresses the qualifications of class counsel separate from the inquiry into the permissibility of a class action in general, the

12

inclusion of the second prong described in <u>Civic Ass'n</u> and other cases would now be redundant. However, given the facts that this amendment is so recent and that the Court may determine that this is still a necessary area of inquiry before it will certify the proposed class, the Plaintiffs offer the affidavits of Attorney Robert Heagney and Stuart Brown which demonstrate their qualifications to prosecute this matter on behalf of the class.[4]

In the present case, the named Plaintiffs' claims are virtually identical to those of the class. See, generally, Complaint. As discussed in their arguments as to their claims being typical of those of the class, the Plaintiffs seek to prove that the wrongs done to them in the past were the result of a pattern and practice of discrimination at the MDC. This discrimination manifests itself in a variety of ways, and the Plaintiffs seek to prevent future occurrences of discrimination through equitable relief which would benefit the class as a whole: for example, the Plaintiffs' request that the Court "Enter preliminary and permanent relief enjoining the discriminatory conduct necessary to end the Defendant's discriminatory practices and prevent current and future harm to Plaintiffs and the Class...." Complaint, Prayer for Relief. Furthermore, the Plaintiffs desire to force the Defendant to comply with its requirements under federal law by maintaining its affirmative action plan and applying it to employee relations. See <u>In re Drexel Burnham Lambert Group, Inc.</u>, 960 F.2d 285, 291 (2d Cir. 1992) (finding representation adequate where representatives' interests were not antagonistic to the remainder of the class, as all members "share a common interest in showing that [defendant] violated federal and state securities laws.").

---

[4] The Court should note, moreover, that the qualifications set forth in the affidavits of Attorneys Heagney (Exhibit B) and Brown (Exhibit A) demonstrate that the attorneys acting on behalf of the named Plaintiffs should be appointed as class counsel pursuant to the recent amendment to Rule 23. See Rule 23 (g) (1) (C) (i).

13

It is apparent that there is no conflict between the interests of the named Plaintiffs and those of the class. Therefore, the Court should find that the Plaintiffs will fairly and adequately protect the interests of the class.

**F.     Risk of Incompatible Duties – Rule 23 (b) (1) (A)**

In addition to the prerequisites set forth in Rule 23 (a), a plaintiff must also show that its case falls within one of the categories described by Rule 23 (b). The present case, first, would fall within the description of Rule 23 (b) (1) (A). A class should be certified if the opposing party would otherwise be at risk of being subjected to incompatible duties. For example, in Mungin v. Florida East Coast Railway Company, 318 F. Supp. 720, 730 (M.D. Fla. 1970), the District Court held "there was a risk of inconsistent or varying adjudications with respect to the rights of individual members of the craft or class in regard to back pay, reinstatement, etc. The possibility of incompatible standards being imposed upon the defendant did exist." In such a situation, certification of a class action under Rule 23 (b) (1) (A) is appropriate. See id. In the present situation, the prosecution of a multitude of suits against the Defendant would also likely result in a multitude of conflicting duties with regard to the proper treatment of employees. For example, one court might determine that it is appropriate to enter a judgment prohibiting all MDC hiring without job posting, while another might find that the MDC should be required to obtain permission from the labor unions before failing to post a position, and a third might find that a plaintiff offered insufficient proof of discrimination in the job posting process to justify judicial intervention.

The Court should determine that Rule 23 (b) (1) (A) applies to the present case.

14

### G.     Class Seeking Final Equitable Relief – Rule 23 (b) (2)

The Court may also find that the present case falls within the description of Rule 23 (b) (2) which provides that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole…." Having examined the allegations of the Complaint and the relief requested by the Plaintiffs, the Court should determine that Rule 23 (b) (2) applies. "[I]t is now settled that 23 (b) (2) is an appropriate vehicle for injunctive relief against a class of local public officials." Marcera v. Chinlund, 595 F.2d 1231, 1238 (2d Cir. 1979).

The Defendants may object that the fact that monetary relief is sought makes the present case fall outside of the description set forth in Rule 23 (b) (2).  First, the Court should note that back pay and front pay, as requested by the Plaintiffs, are forms of equitable relief according to Second Circuit precedent.  See Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147 (2d Cir. 2001).  Furthermore, in a class action certified under Rule 23 (b) (2), the plaintiffs need not forego any and all claims for damages, but the Court may examine the relative importance of the equitable relief to the damages sought:

"The district court may allow (b) (2) certification if it finds in its informed, sound judicial discretion that (1) the positive weight or value [to the plaintiffs] of the injunctive or declaratory relief sought is predominant even though compensatory or punitive damages are also claimed, … and (2) class treatment would be efficient and manageable, thereby achieving an appreciable measure of judicial economy.

"Although the assessment of whether injunctive or declaratory relief predominates will require an ad hoc balancing that will vary from case to case, before allowing (b) (2)

15

certification a district court should, at a minimum, satisfy itself of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits." (Citation omitted; internal quotation marks omitted.) Id., 164.

The Defendant's relationship with its African-American employees is what is at issue in the present case. See, generally, Complaint. The Plaintiffs seek an end to a continuing pattern of conduct which adversely affects every member of the class. "The (b) (2) class action is intended for cases where broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury." Id., 162. The necessity of class-wide injunctive relief is most apparent in cases such as the present one alleging a pattern and practice of racial discrimination. "Indeed, pattern of racial discrimination cases for injunctions against state or local officials are the 'paradigm' of Fed.R.Civ.P. 23 (b) (2) class action cases." Comer v. Cisneros, 37 F.3d 775, 796 (2d Cir. 1994).

Therefore, the Court should determine that the present case falls within the description set forth by Rule 23 (b) (2).

16

## IV.  CONCLUSION

The Plaintiffs have demonstrated that the present case satisfies the requirements of Rule 23. Therefore, the Court should enter an Order that class certification is appropriate.

Respectfully submitted,

THE PLAINTIFFS

By: _____
Robert W. Heagney (ct05658)
Stuart E. Brown (ct24659)
Hassett & George, P.C.
555 Franklin Avenue
Hartford, CT 06114
(860) 296-2111
Fax: (860) 296-8494

17

## **CERTIFICATION**

I hereby certify that a copy of the foregoing has been mailed this ___ day of January, 2004 to the following counsel of record:

Anthony J. Palermino, Esq.
Law Offices of Anthony J. Palermino
945 Wethersfield Avenue
Hartford, CT 06114

_____
Robert W. Heagney