UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-----------------------------------------------------------X

**Kendra HEWITT, Darlene WHALEY**
**and Ethel L. Wright**

      **Individually and as**
      **Class Representative,**        **Civil Action No. 3:01CV2037 (SRU)**
      **Plaintiff,**

                              **Affidavit of Plaintiff, Charles Davis**

             **v.**

**THE METROPOLITAN DISTRICT**
**COMMISSION,**
**Defendant.**

-----------------------------------------------------------X

STATE OF CONNECTICUT      )
                            ) ss.  East Hartford            December 26 2002
COUNTY OF HARTFORD       )

### <u>AFFIDAVIT OF CHARLES DAVIS</u>

    I, the undersigned, having been duly sworn on my oath, do hereby depose and say:

    1.    That I am over eighteen (18) years of age and believe in the obligations of an oath.

    2.    I have been employed with The Metropolitan District Commission (the "MDC") since _1996_ when I was hired as _Cad Drafter_.

3.      I make this affidavit in support of the Court's determination that it is appropriate for a class action to proceed, and as I believe a pattern and practice of racially discriminatory conduct has been undertaken by the management of The Metropolitan District Commission to accept, encourage or tolerate discriminatory treatment of minority employees working at The MDC.

4.      I state the following specifics from my personal experiences in the work environment:

      a.    I have observed the failure of the MDC to hire African-American/black and minority employees consistent with the workforce population.

      b.    I have observed the undermining of personal and work reputation of African-American/black and minority employees by the MDC supervision.

      c.    I have observed the failure of the MDC to promote African-American/black and minority individuals.

      d.    The Metropolitan District Commission has failed to have an Ombudsman or Independent Affirmative Action Officer to receive confidential complaints of discrimination or to assist minority candidates seek and obtain promotion.

5.    Other minority employees at the MDC have expressed to me a fear of being involved in the present litigation because of past practice of MDC Management against MDC employees who raised litigation concerns.

6.    I have attempted to obtain legal counsel for my employment concerns in the past and discovered that it was virtually impossible to find legal counsel willing to take on an employment matter against the MDC because of its political connections and influence.

_Charles S Davis_
Charles Davis

Subscribed and sworn to before me this 26 day of December, 2002.

Notary Public
My Commission Expires:

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

----------------------------------------------------------X

Kendra HEWITT, Darlene WHALEY
and Ethel L. Wright

       Individually and as
       Class Representative,       Civil Action No. 3:01CV2037 (SRU)
       Plaintiff,

                                   Affidavit of Plaintiff, Wesley Mitchell

            v.

THE METROPOLITAN DISTRICT
COMMISSION,
Defendant.

----------------------------------------------------------X

STATE OF CONNECTICUT    )
                           ) ss.  East Hartford           January 10, 2003
COUNTY OF HARTFORD    )

### AFFIDAVIT OF WESLEY MITCHELL

     I, the undersigned, having been duly sworn on my oath, do hereby depose and say:

    1.     That I am over eighteen (18) years of age and believe in the obligations of an oath.

    2.     I have been a Payloader Operator working for The Metropolitan District Commission at the Trash to Energy Plant for 15 years and am an African-American.

3.    I make this affidavit in support of the Court's determination that it is appropriate for a class action to proceed, and as I believe a pattern and practice of racially discriminatory conduct has been undertaken by the management of The Metropolitan District Commission to accept, encourage or tolerate discriminatory treatment of minority employees working at The MDC.

4.    I state the following specifics from my personal experiences in the work environment:

a.    Supervisors and other employees refer to African-American/black employees as a "monkey" or "gorilla," and supervisors will refer to African-American/black employees collectively as "them" when discussing African-American/black employees with other white employees. I have seen these terms used about other African-American/black employees, and I have also seen this allowed to extend to the placement of a monkey doll on an African-American/ black employee's desk.

b.    I have also seen disparate treatment of African-American/black employees as opposed to white employees in that, if a supervisor is told an African-American/black employee does not work hard, he accepts and believes this fact, but if it is said about a white employee by an African-American/black employee, the African-American/black

employee will be reprimanded and told not to ever tell anyone a white employee does not work hard.

c.  In my personal experience and from my observation of the treatment of African-American/black and white employees, I have observed African-American/black employees much more commonly being disciplined in terms of reprimands, suspensions and terminations, and demotions than any white employees.  In fact, I have observed personal experiences and those of others where I was suspended for being involved in a "fender bender," while a white employee who dragged a supervisor across the floor because of his inadvertence was not disciplined in any way, shape or form.

d.  I was the only person that I am aware of that has ever been demoted at the Trash to Energy Plant.

e.  I was personally written up for seven days straight by a white supervisor in the seven days before that supervisor's retirement.  No management action to stop this harassment was taken, despite my complaints.

f.  My reviews have been consistently poor, and I have learned from at least one supervisor that when I was reviewed and the review was

acceptable, it was sent back by either Human Resources or upper supervision and told that they were to make the review worse.

g.    I have consistently seen more severe and common discipline meted out to African-American/black employees than to white employees, who were often given no discipline.

h.    Until recently, it was impossible to obtain any support of mentoring by an African-American/black employee for determining whether there was any opportunity for promotion, despite the Affirmative Action Plan requiring a career development plan and the counseling of minority employees on future promotions and place to achieve those promotions (page 73).

i.    Throughout my time at the MDC, I have watched an "old boy" system of white males being promoted without regard to the capabilities of the individual and a failure to promote African-American/black employees, and the use of creating records of discipline and poor performance reviews to prevent African-American/black employees from being eligible candidates for promotion.

j.    While I worked at the MDC Plant, I have operated the CAT bucket loader, the overhead cranes, and worked in the control room. I was never provided any formal training for any of these positions. Formal

training was offered on these positions and training individuals were brought in, and the training was provided almost exclusively to white employees.  The Affirmative Action Plan mandates equal access to training for all employees.

5.    Other minority employees at the MDC have expressed to me a fear of being involved in the present litigation because of past practice of MDC Management against MDC employees who raised litigation concerns.

6.    I have attempted to obtain legal counsel for my employment concerns in the past and discovered that it was virtually impossible to find legal counsel willing to take on an employment matter against the MDC because of its political connections and influence.

7.    I believe the above-referenced course of conduct constitutes an intentional covert policy of discrimination by MDC Management, working through the Personnel Department and supervision, against minority employees in their employment at The Metropolitan District Commission.

_____
Wesley Mitchell

Subscribed and sworn to before me this 10th day of January, 2003.

_____
Robert W. Heagney
Commissioner of the Superior Court

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

---------------------------------------------------------X

**Kendra HEWITT, Darlene WHALEY
and Ethel L. Wright**

      **Individually and as
      Class Representative,**         **Civil Action No. 3:01CV2037 (SRU)**
      **Plaintiff,**

                  **Affidavit of Plaintiff,**
        **v.**             **Kendra (Hewitt) Morgan**

**THE METROPOLITAN DISTRICT
COMMISSION,
Defendant.**

---------------------------------------------------------X

STATE OF CONNECTICUT    )
                         ) ss.  East Hartford         February 3, 2003
COUNTY OF HARTFORD     )

### AFFIDAVIT OF KENDRA (HEWITT) MORGAN

    I, the undersigned, having been duly sworn on my oath, do hereby depose and say:

    1.      That I am over eighteen (18) years of age and believe in the obligations of an oath.

    2.      I was employed with The Metropolitan District Commission since 1995 when I was hired as a Word Processor.

3.     I make this affidavit in support of the Court's determination that it is appropriate for a class action to proceed, and as I believe a pattern and practice of racially discriminatory conduct has been undertaken by the management of The Metropolitan District Commission to accept, encourage or tolerate discriminatory treatment of minority employees working at The MDC.

4.     I state the following specifics from my personal experiences in the work environment:

a.    During my employment with the MDC, I have observed African-American/black and minority employees more commonly given poor performance evaluations than Caucasian employees.

b.    I have observed the failure of the MDC to hire African-American/black and minority employees consistent with the workforce population.

c.    I have observed the undermining of personal and work reputation of African-American/black and minority employees by the MDC.

d.    I have observed the failure of the MDC to promote African-American/black and minority individuals.

e.    I have observed a hostile/racially charged work environment against African-American/black and minority employees.

f.  I have observed the harassment and threatening of African-American/black and minority employees.

g.  During my employment with the MDC, I have observed African-American/black more commonly reprimanded, suspended, demoted and receiving more severe forms of discipline than Caucasian employees.

h.  I have observed the denial of African-American/black employees the opportunity to work overtime, while allowing Caucasian employees to work overtime.

i.  I have observed the denial of African-American/black employees retroactive pay on the same terms, conditions and lengths as Caucasian employees.

j.  I have observed the denial or excessive delay of training to African-American/black employees while Caucasian employees are trained.

k.  I have observed African-American/black employees being delayed for upgrades.

l.  I have observed African-American/black employees subjected to secret investigations and spying on and following African-

American/black employees, which does not occur with Caucasian employees.

m.   I have observed a failure to post jobs for promotion in departments where African-American/black employees are most senior and eligible for promotion.

n.   I have observed African-American/black employees receiving retaliation for opposing discriminatory treatment of themselves and others.

o.   I have observed the grouping and isolating African-American/black employees in departments or job areas and the steering of African-American/black employees into lower paying jobs.

p.   I have observed the banning of friends and family of African-American/black employees from the workplace

q.   I have observed the failure to provide African-American/black employees with career support and mentoring.

r.   The Metropolitan District Commission has failed to have an independent Ombudsman or Affirmative Action Officer to receive confidential complaints of discrimination.

5.      Other minority employees at the MDC have expressed to me a fear of being involved in the present litigation because of past practice of MDC Management against MDC employees who raised litigation concerns.

6.      I have attempted to obtain legal counsel for my employment concerns in the past and discovered that it was virtually impossible to find legal counsel willing to take on an employment matter against the MDC because of its political connections and influence.

Kendra (Hewitt) Morgan

Subscribed and sworn to before me this 3rd day of February, 2003.

Robert W. Heagney
Commissioner of the Superior Court

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------X

**Kendra HEWITT, Darlene WHALEY
and Ethel L. Wright**

      **Individually and as**         **Civil Action No. 3:01CV2037 (SRU)**
      **Class Representative,**
      **Plaintiff,**
                            **Affidavit of Plaintiff, Keith S. Quildon**

        **v.**

**THE METROPOLITAN DISTRICT
COMMISSION,
Defendant.**

-------------------------------------------------------X

STATE OF CONNECTICUT    )
                           ) ss.  East Hartford              June 3, 2003
COUNTY OF HARTFORD    )

<u>**AFFIDAVIT OF KEITH S. QUILDON**</u>

    I, the undersigned, having been duly sworn on my oath, do hereby depose and say:

    1.     That I am over eighteen (18) years of age and believe in the obligations of an oath.

    2.     I have been employed with The Metropolitan District Commission since November 1, 1999 when I was hired as Plant Operator.

    3.     I make this affidavit in support of the Court's determination that it is appropriate for a class action to proceed, and as I believe a pattern and practice of racially discriminatory conduct has been undertaken by the management of The Metropolitan District Commission to accept, encourage or tolerate discriminatory treatment of minority employees working at The MDC.

4.      I state the following specifics from my personal experiences in the work environment:

     a.    I have observed the undermining of personal and work reputation of African-American/black and minority employees by the MDC.

     b.    I have observed the failure of the MDC to promote African-American/black and minority individuals.

     c.    I have observed the harassment and threatening of African-American/black and minority employees.

     d.    I have observed the denial of African-American/black employees the opportunity to work overtime, while allowing Caucasian employees to work overtime.

     e.    I have observed the denial or excessive delay of training to African-American/black employees while Caucasian employees are trained.

     f.    I have observed African-American/black employees being delayed for upgrades.

     g.    I have observed African-American/black employees subjected to secret investigations and spying on and following African-American/black employees, which does not occur with Caucasian employees.

     h.    For nearly a year, I have been overlooked regarding the receiving of my scalehouse operators' license which I have applied for three times. The original application was submitted at the same time as

other co-workers who have received their license.  Additionally, I trained an employee who received his license nearly a year ago.

i.    My supervisor asks co-workers to time my breaks, and regularly undermines and speaks poorly of me and other African-American/black employees.

5.    Other minority employees at the MDC have expressed to me a fear of being involved in the present litigation because of past practice of MDC Management against MDC employees who raised litigation concerns.


_Keith S. Quildon_
Keith S. Quildon

Subscribed and sworn to before me this 3rd day of June, 2003.


_Erin M. Hennessey_
Erin M. Hennessey
Notary Public
My Commission Expires: March 31, 2008

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

--------------------------------------------------------X

**Kendra HEWITT, Darlene WHALEY**
**and Ethel L. Wright**

      **Individually and as**
      **Class Representative,**        Civil Action No. 3:01CV2037 (SRU)
      **Plaintiff,**

                          **Affidavit of Plaintiff, Curley Richard**

           **v.**

**THE METROPOLITAN DISTRICT**
**COMMISSION,**
**Defendant.**

--------------------------------------------------------X

| | | |
|---|---|---|
| STATE OF CONNECTICUT | ) | |
| | ) ss. East Hartford | November  , 2002 |
| COUNTY OF HARTFORD | ) | |

<u>**AFFIDAVIT OF Curley Richard**</u>

      I, the undersigned, having been duly sworn on my oath, do hereby depose and say:

      1.      That I am over eighteen (18) years of age and believe in the obligations of an oath.

2.      I have been employed with The Metropolitan District Commission (the "MDC") since March 16, 1970 when I was hired as a Crew Leader at the Hartford Wastewater Treatment Plant.

3.      In 1982, I sought a promotion to Plant Foreman in East Hartford but was denied such promotion and a white individual who did not possess the Class III license required by State law to perform the job was promoted instead.

4.      I appealed this decision and the MDC District Manager overturned the decision of the Director and ordered me into the position.

5.      The Director then told me I would never again be promoted.

6.      In November of 1988 I applied for the position of Assistant General Foreman/Assistant Plant Superintendent in the Hartford Wastewater Plant.

7.      The position was posted with a Class III Wastewater license issued by the state Department of Environmental Protection requirement lower than the MDC Position Requirements Study mandated.

8.      The MDC Position Requirements Study identified the job to have a Class IV license requirement, while I was the only Class IV licensed Wastewater Plant Manager of the 1026 Union, and thus eligible for the job.

2

9.      A white individual who I was originally supervisor over was promoted to the Hartford job Assistant Superintendent position.

10.      I filed a complaint with the Connecticut Commission on Human Rights and Opportunities and the E.E.O.C. of race discrimination and retaliation.

11.      The MDC Human Resources personnel utilized a criteria for selection which rated me higher overall, and particularly in wastewater treatment experience and supervisory experience.

12.      An interview was conducted by three MDC Managers who recommended the white employee over me.

13.      The then MDC Affirmative Action Plan required multiple trained interviewers and that said interviewers were required to make notes of the questions and answers, and the basis supporting the selection.

14.      The same white individual was selected by the MDC over myself for the position of Superintendent of the Hartford Wastewater Treatment Plant despite the fact that he did not have a Class IV mandated license.

15.      The CHRO found reasonable cause the believe I had been discriminated against which was largely supported by the Human Resources documentation finding me

3

more qualified, the licensure requirements and the interview notes, which did not support the reason given by the interview team for selecting the white employee.

16.     In 1993, the MDC confessed a judgment in my favor in the amount of $88,000 for their intentional discrimination against me for failing to promote me to Assistant Superintendent of the Hartford Wastewater Plant.

17.     Thereafter, the State of Connecticut Department of Environmental Protection ordered the white employee promoted over me removed as Superintendent of the Hartford Wastewater Treatment Plant as he did not have the proper license (Class IV) to hold the MDC position of Superintendent.

18.     The MDC had hired a consultant to test and screen for the Superintendent's position, which had never been done before.

19.     The MDC attempted to validate its actions through the consultant.

20.     In 1994, I resolved my claim against the MDC for the Superintendent's position by confidential settlement, though I was promoted to Superintendent and received a financial reward.

21.     Thereafter, in 1995 the MDC Management Board ordered a rewriting of the Affirmative Action Plan by deleting the sections utilized by the CHRO and my counsel to

4

prove the pattern and practice of discrimination and retaliation, specifically the sections mandating procedures such a three trained interviewers, interview notes, appeals and other processes related to the hiring processes under the Affirmative Action Plan.

22.    Due to the widespread knowledge of my litigation against the MDC, many MDC minority employees have and continue to approach me for advice on how to deal with the discrimination they face at the MDC.

23.    Through my personal experience, my experience as a Manager, and my contacts with MDC employees, I have observed a pattern and practice of discrimination against minority employees at the MDC in some departments.

24.    Employees who have raised a claim of discrimination or supported a fellow employee's claim of discrimination, have received retaliation from MDC Management.

25.    I make this affidavit in support of the Court's determination that it is appropriate for a class action to proceed, and as I believe a pattern and practice of racially discriminatory conduct has been undertaken by some management of The Metropolitan District Commission to accept, encourage or tolerate discriminatory treatment of minority employees working at The MDC.

5

26.       I state the following specifics from my personal experiences in the work environment:

a.    I have observed the failure of the MDC to hire African-American/black and minority employees consistent with the workforce population, except in the lowest level, dirtiest and most undesirable work.

b.    I have observed the undermining of personal and work reputation of African-American/black and minority employees by the MDC supervision.

c.    I have observed the failure of the MDC to promote African-American/black and minority individuals.

27.       The Metropolitan District Commission has failed to fill the position of Employee Ombudsman or to have an Independent Affirmative Action Officer to assist minority candidates seek and obtain promotion.

6

28.     I have attempted to obtain legal counsel for my employment concerns in the past and discovered that it was virtually impossible to find legal counsel willing to take on an employment matter against the MDC because of its political connections and influence. I have been well represented by Attorney Robert W. Heagney in my civil actions, and in responding to acts of retaliation following my last settlement.

Curley Richard

Subscribed and sworn to before me this        day of November, 2002.

Notary Public
My Commission Expires:

7