-14-

commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a).

Numerosity exists when the "class is so numerous that joinder of all members is

impracticable." Fed. R. Civ. P. 23(a)(1); Strykers Bay Neighborhood Council.

Inc. v. City of New York, 695F. Supp. 1531, 1538 (S.D.N.Y. 1988).

Commonality exists when "there are questions of law or fact common to the

class ...." Fed. R. Civ. P. 23(a)(2).  In order to establish this requirement, the

Plaintiffs must identify the specific questions of law or fact that are common to

their claims and those of the putative class members they seek to represent.

Falcon, 457 U.s. at 158.  As the Supreme Court has noted, the commonality and

typicality requirements of subsection (a) tend to merge. Id. at 158 n.13.

Typicality means that "the claims or defenses of the representative parties are

typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  As the

Second Circuit noted, the question is whether the disputed issues "occupy

essentially the same degree of centrality to the named plaintiffs' claims as to that

of other members of the proposed class." Krueger v. New York Tele. Co., 163

F.R.D. 433,  (S.D.N.Y. 1995).

The adequacy of representation requirement focuses on whether "the

representative parties will fairly and adequately protect the interests of the class."

-15-

Fed. R. Civ. P. 23(a)(4).  The Supreme Court has repeatedly stated that "the mere fact that a complaint alleges racial…… discrimination does not in itself ensure that the party who has brought the lawsuit will be an adequate representative of those who may have been the real victims of that discrimination."  East Texas, 431 U.S. at 405-06; Falcon, 457 U.S. at 157.

### 2. The Plaintiffs have not met the requirements of Rule 23(a).

The Plaintiffs have alleged discrimination in the Defendant's performance evaluation system, compensation practices and promotions.  More specifically, the Plaintiffs claims can be summarized as follows:

1].  Hewitt seeks to prove that she was denied an appropriate promotion; she was lied to, harassed and her reputation defamed; she was limited in the training opportunities provided to her; she was intentionally excluded from staff meetings; and she was denied full retroactive pay upon her promotion despite the routine grant of such retroactive pay to Caucasian employees.

2].  Whaley seeks to prove that a promotion she sought was given to a less-qualified Caucasian candidate; she was unreasonably hindered in obtaining an upgrade to her existing position; and she was denied retroactive pay when she eventually was awarded the upgrade.

3]. Wright seeks to prove that she was told she was not qualified for particular positions but received no explanation of how she could become qualified in the future; when a position was again vacant, several obstacles were placed in her way specifically to prevent her from obtaining the position; she was denied the opportunity to serve in an acting capacity within a vacant position to which she was next in line, while Caucasian employees routinely serve in an acting capacity within vacant positions.  Complaint at paragraphs 7, 8, and 9 and Plaintiffs' Memorandum at pages 11 and 12.

-16-

As noted above, the named Plaintiffs have not alleged any facts concerning discrimination in performance evaluations. Given this failure to allege any claim concerning the performance evaluation system, the Plaintiffs cannot represent a class in this area.

## Numerosity

The Plaintiff has failed to demonstrate that it would be impracticable to join the other effected Plaintiffs in this action. The Plaintiffs have included a list of employees who apparently would be members of this class, but this is not persuasive. The list is wrought with error, not supported by statistical evidence, and demonstrates the varied circumstances of each putative class member.

## Commonality and Typicality

The class list, Plaintiffs' Exhibit A-1 includes 178 names, 80 are (or have been) represented by Local 184, AFSCME (operational and maintenance employees); 31 are (or have been) represented by Local 3713, AFSCME (engineering, technical and clerical employees); 10 are (or have been) represented by Local 1026, AFSCME (supervisory employees); 8 are part of the non-Unionized group; and, 49 were part-time summer temporary employees. There were 12 individuals who have already retired from active employment and 10

-17-

individuals who were separated (either voluntarily or involuntarily) from the Defendant's employ. One individual listed is deceased. There were 34 names repeated or duplicated. <u>Zaik at 26</u>.

The claims made by the Plaintiffs, as described in both their complaint and memorandum, demonstrate a different set of facts for each Plaintiff. Hewitt and Whaley allege denials of retroactive pay, under different circumstances. If the Plaintiffs were to prevail, each circumstance must be evaluated individually to determine the proper amount of retroactive pay due. Wright has not alleged any compensation issue at all. Wright simply alleges she was denied promotions, and also denied an opportunity to serve in an acting capacity. These allegations differ from those of Hewitt and Whaley.

The named Plaintiffs do not have similar claims, and the MDC would present a different set of facts in defense of each claim. In addition, the MDC has a decentralized system for promotions. The supervisor and manager within a work area determine the staffing needs, and who will be promoted. There is no central authority which makes this determination. Each putative class member would have a different set of circumstances, with a different supervisor and manager involved. Every position is different, with different qualifications and experience

-18-

required.  The questions raised will not be common and/or typical, but rather

unique to the individual employee.

Finally, the Plaintiffs have not presented any statistical evidence in support

of their complaint and motion.  There is no way to determine if the putative class

has similar claims and if these claims/interests are adequately protected by these

Plaintiffs.

### 3.  Plaintiff's have not demonstrated sufficient evidence to support their request for certification.

The Supreme Court held in General Telephone Co. v. Falcon, 457
U.S. 147, 157-158 (1982):

> [c]onceptually, there is a wide gap between (a) an individual's
> claim that he has been denied a promotion on discriminatory
> grounds, and his otherwise unsupported allegation that the
> company has a policy of discrimination, and (b) the existence of a
> class of persons who have suffered the same injury as that
> individual, such that the individual's claim and the class claims will
> share common questions of law or fact and that the individual's
> claim will be typical of the class claims. For respondent to bridge
> that gap, he must prove much more than the validity of his own
> claim. Even though evidence that he was passed over for promotion
> when several less deserving whites were advanced may support the
> conclusion that respondent was denied the promotion because of
> his national origin, such evidence would not necessarily justify the
> additional inferences (1) that this discriminatory treatment is
> typical of petitioner's promotion practices, (2) that petitioner's
> promotion practices are motivated by a policy of ethnic
> discrimination that pervades petitioner's Irving division, or (3) that
> this policy of ethnic discrimination is reflected in petitioner's other
> employment practices, such as hiring, in the same way it is

-19-

> manifested in the promotion practices. These additional inferences
> demonstrate the tenuous character of any presumption that the class
> claims are "fairly encompassed" within respondent's claim.

The Plaintiffs in their Motion and Memorandum, did not submit any

statistical evidence in support of its claim for class certification.  Absent any

statistical evidence, the Plaintiff should be denied class certification.  The

Plaintiffs have submitted a list of African American employees, with various job

titles, but have not demonstrated that these employees have suffered any

discrimination at all.

The Plaintiffs acknowledge the need for statistical evidence to bridge the

gap between the named Plaintiffs and the putative class.  The Plaintiffs allege in

their complaint at paragraph 17:

There are questions of law and fact common to the Class that

predominates over any questions affecting only individuals. Among these

common questions are:

> Whether there are statistically significant disparities between the
> evaluation scores of African-American employees and the
> evaluation scores of Caucasian employees, sufficient to permit an
> inference of intentional discrimination;

> Whether there are statistically significant disparities between the
> compensation awarded to African-American employees and the
> compensation awarded to similarly situated Caucasian employees,
> sufficient to permit an inference of intentional discrimination;

-20-

> Whether there are statistically significant disparities between the promotions awarded to African-American employees and the promotions awarded to similarly situated Caucasian employees, and whether pay practices including retroactive pay practices show statistically significant disparities between classes of employees sufficient to permit an inference of intentional discrimination.

The Plaintiffs rely on several affidavits filed with their motion. These affidavits are vague, and make only general statements concerning alleged discrimination. The affidavits are not specific and contain no dates or specific incidents in support of the conclusions made.

In addition, the affidavits are largely irrelevant. For example, the affidavit of Daisy Chavez should not be considered by the Court. First, Chavez is not a member of the putative class. Second, her claims are the subject of a lawsuit, Chavez vs. MDC, Docket No. 302CV458(MRK), currently being litigated in United States District Court.

The affidavit of Curley Richards is also not relevant. Richards is not a member of the putative class. In addition, he has not alleged any conduct after 1995, and so none of his allegations fall within the timeframe relevant to the complaint.

Several of the other affidavits involve individuals who previously filed discrimination complaints with the Connecticut Commission on Human Rights and Opportunities (CHRO).

-21-

Mr. Ronald Woods has never filed a Complaint with CHRO. Mr. Wesley

Mitchell did submit a Complaint dated October 12, 1995, alleging improper job

performance assessment (race/color). The Complaint was dismissed on October

28, 1995. Mr. Keith Slaughter, Mr. Keith Quildon, Ms. Monnece Ritter, Ms.

Jennifer Taylor have never submitted Complaints to CHRO. Mr. Linwood

Braswell filed a CHRO Complaint August 23, 2001, alleging failure to promote

(race/color) – Mr. Braswell's Request for Reconsideration was rejected May 8,

2002. Mr. Douglas Woods has made four CHRO Complaints as follows: (a)

February 9, 1996 (alleging improper disciplinary action – race/color) – this

Complaint was dismissed on April 24, 1996; (b) December 23, 1996 (alleging

improper overtime distribution – race/color) – Mr. Woods ' Request for

Reconsideration was rejected by CHRO March 26, 2002; (c) May 20, 1988

(alleging failure to promote – race/color) – this Complaint was dismissed

December 1989; and, (d) October 26, 1998 (alleging failure to promote –

race/color and retaliation for previous opposition) – Mr. Woods' Request for

Reconsideration was rejected July 5, 2000. <u>Zaik at 27.</u>

The Levy & Droney report (the Plaintiffs submitted certain portions as

Exhibit D) should not be considered by the Court. The report was a compliance

audit of the MDC's employment practices. The report is not relevant to the

-22-

individual claims made by the named Plaintiffs.  The report does not address any

of the individual claims raised by these Plaintiffs.  The report itself, is simply a

broad overview of the Defendant's employment practices, with no statistical

analysis.  Perhaps the report may have some value as a management tool, but is

not helpful to the Court's determination.  If the report is admitted as evidence, it

will be necessary for this Court to hold a separate hearing concerning the

methodology used to compile the report.  In the event that Court does consider the

report, it should be noted that Plaintiffs attached only portions of the report to its

Memorandum.  The report made several recommendations concerning the

management of the MDC, and ways to improve the communication of staff and

management.  The report did ultimately conclude the following:

> In this section of the report, we examine findings made as a result of the
> Compliance Audit.  **We have uncovered no evidence of overt**
> **institutionalized racism at the MDC.  There appears to be no evidence**
> **of systemic discrimination and no pattern or practice discrimination**
> **in the District; nor do the MDC policies appear designed to have a**
> **discriminatory effect.  There is no evidence that promotional policies**
> **unfairly disadvantage minorities or that job revaluations are**
> **inherently discriminatory.[7]**  (Emphasis in the original).

-23-

And at footnote 7:

7.    For example, we did not find evidence of a consistent practice of
acting upon Caucasian employee job revaluations and not African-
American job revaluations or that Caucasian revaluations were approved
and jobs upgraded while minorities were not. These were complaints
raised in the presentation to the Board on October 1, 2001. It is to be
noted, however, that minority employees who presented for job
revaluation legitimately could claim that the MDC failed, sometimes for
years, to resolve those claims. That practice seems to have been an issue
for all employees seeking revaluation, however. <u>Levy & Droney at 11,
Exhibit B.</u>

In this section of the report, we make recommendations consistent with our

findings from the Compliance Audit. **Again, we emphasize that while there**

**appears to be no overt institutionalized discrimination, the adoption and**

**implementation of clearly defined policies and procedures and a real**

**commitment to communication and problem solving will work to eliminate**

**perceptions of unfair treatment.** (Emphasis in the original). We recommend

that the MDC should annually review its policies through such an audit. <u>Levy</u>

<u>& Droney at 42, Exhibit B.</u>

Any comments or findings in the report must be reviewed by the Court in

context – the audit found <u>no discrimination.</u>

Contrary to the plaintiffs' contention, the Levy & Droney report does not

substantiate the allegations of discrimination made by the Plaintiffs.

The Plaintiffs argue at page 6 of their memorandum that the Defendant's

Affirmative Action Plan is somehow inadequate. However, whatever the status of

the Defendant's Affirmative Action Plan, the Plaintiffs have not demonstrated

-24-

that this has resulted in any discriminatory treatment of these Plaintiffs or the

putative class.

**D.  The Plaintiffs have not met the requirements of Rule 23(b)(1)A.**

In <u>Abramovitz v. Ahern</u>, 96 F.R.D. 208, 215 (1982) the Court stated:

Rule 23(b)(1)(A) provides that a class action may be maintained when:

> the prosecution of separate actions by or against individual
> members of the class would create a risk of inconsistent or
> varying adjudications with respect to individual members
> of the class which would establish incompatible standards
> of conduct for the party opposing the class.....

> Certification under Rule 23(b)(1)(A) is proper only where
> the class representatives seek injunctive relief to alter an
> on-going course of conduct which is either legal or illegal
> as to all members of the class. See *McDonnell Douglas
> Corp. v. United States District Court*, 523 F.2d 1083,
> 1085—86 (9th Cir.1975), *cert. denied*, 425 U.s. 911, 96
> S.Ct. 1506, 47 L.Ed.2d 761 (1976); *Landau v. Chase
> Manhattan Bank*, 367 F.Supp. 992, 997 (S.D.N.Y.1973);
> *Tober v Charnita, Inc.*, 58 F.R.D. 74, 81 (M.D.Pa. 1973).
> The language of the sub-section indicates that it applies
> only to actions in which there is not only a risk of
> inconsistent adjudications but also of incompatible conduct,
> that is, where a defendant is sued by different plaintiffs
> asking for different and incompatible affirmative relief.
> Hence, it does not reach the case in which different
> individuals sue the same defendant for monetary relief and
> one may lose while the other may win. *Lardau v. Chase
> Manhattan Bank, supra.* As the Ninth Circuit indicated in
> *La Marv v.. H. & B. Novelty & Loan Co.*, 489 E.2d 461,
> 466 (9th Cir.1973), "[i]infrequently. if ever, will this
> [certification under Rule 23(h)(1)(A)] be the case when the
> action is for money damages." Similarly, when, as in this
> case, the incidental injunctive relief requested creates the
> risk of inconsistent but not incompatible standards of
> conduct, certification under Rule 23(b)(1)(A) is improper.

-25-

> Thus, neither of the plaintiffs' claims for injunctive or
> monetary relief is certifiable under Rule 23(b)( 1)(A).

As argued at length in Section III E below, the Plaintiffs' claims for money damages dominate this action. The Plaintiffs' claim for injunctive relief is secondary to the money damages sought for the named Plaintiffs and the putative class.

The Plaintiffs claim the following injunctive relief in its prayer for relief:

> Enter a judgment that Defendant shall hire an experienced
> Employee Ombudsman with independence to investigate and raise
> issues of employee mistreatment while protecting the employee's
> identity.
>
> Enter a judgment prohibiting all MDC hiring without job posting.
>
> Enter a judgment that the Affirmative Action Officer not share his
> duties as a personnel Department employee.
>
> Enter a judgment that Defendant shall employ an independent team
> of experts to review present discriminatory practices and policies,
> and recommend for implementation policies and procedures as
> needed to guarantee full compliance with anti-discrimination laws.

The type of relief requested does not present a problem that incompatible standards might be set by the Court. In fact, as a practical matter, the cases of the individual Plaintiffs would be joined or consolidated, so that any relief ordered would be consistent.

Given the dominance of the Plaintiffs' claim for damages, and the limited

-26-

injunctive relief sought, the Plaintiffs' claim for certification under 23(b)(1)(A)

should be denied.

**E.  The Plaintiffs have not met the requirements of Rule 23(b)(2).**

In order to satisfy the requirements of Rule 23(b)(2), the Plaintiffs must

demonstrate that the predominant relief sought is injunctive or declaratory.  Eisen,

391 F.2d at 564.  "Subsection (b)(2) was never intended to cover cases . . . where

the primary claim is for damages, but is only applicable where the relief sought is

exclusively or predominately injunctive or declaratory."  Eisen, 391 F.2d at 564.

Unless the monetary relief sought is incidental to the request for injunctive or

declaratory relief, the monetary relief sought predominates and class certification

is inappropriate. Allison v. Citgo Petroleum, 151 F.3d at 402, (5th Cir. 1998), 415;

accord Williams v. Owens-Illinois. Inc., 665 F.2d 918, 928-29 (9th Cir.), cert.

denied, 459 U.S. 971 (1982).

In Reap. v. Continental Casualty Company, 199 F.R.D. 536 (D.N.J. 2001),  the

Court found that, during the damages phase of the trial, individual issues would

predominate over common ones because the class members were subjected to

different forms of discrimination in different divisions of the company by

different supervisors for varying durations of time.  The Court noted that an

additional consideration that made class certification inappropriate was "the

-27-

highly individualized nature of the determination of disparate treatment and

damages [which] makes the interest of individual class members in individually

controlling the prosecution of their claim, rather than having it controlled by class

representatives," a very strong factor weighing against certification.

A recent case decided in the 2nd Circuit, <u>Robertson vs. Sikorsky Aircraft</u>,

Docket No.3:97 CV 1216(GLG), copy attached as <u>Exhibit C,</u> is strikingly similar

to the instant case.  The <u>Sikorsky</u> case involved 7 black employees who made

claims of discrimination in performance evaluations, promotions and

compensation.

The <u>Sikorsky</u> court addressed, at some length, the application of Rule 23(b)

(2).

The <u>Sikorsky</u> plaintiffs sought class certification, and claimed both injunctive

relief and money damages.  The <u>Sikorsky</u> court analyzed the Plaintiffs' claims for

relief, and determined that the case was dominated by the claims for money

damages, and the injunctive relief was secondary.

The <u>Sikorsky</u> court held:

> Despite plaintiffs' rather vague allusions to some form of
> injunctive relief, it is clear that what this case truly involves are
> claims for money damages, not only for the named plaintiffs in this
> action,[3] but for the entire class.  There is nothing to indicate that
> the claims of the named plaintiffs are typical of those of the entire
> class.  Indeed, each of the claims of the named plaintiffs is quite
> distinct.[4] The fact that the named plaintiffs instituted this litigation

-28-

suggests that their claims may be the strongest of the class. In addition, even if all of the named plaintiffs are found to have been discriminated against and that the discrimination against them resulted from subjective employment evaluations, it does not follow that all of the rest of the class members have been so affected. It would require more than 100 separate trials of the claims of each class member to determine if they were individually discriminated against and what damages each should recover, including back pay, front pay, 401(k) benefits, compensatory damages, and punitive damages. Rule 23(b) (2) classes must be cohesive. Where a class suffers from a common injury and seeks class-wide relief, cohesion is presumed, i.e., the sameness in the relief sought binds the class. Allison v. Citgo Petroleum Corp., 151 F.3d 402, 413 (5th Cir. 1998) But where, as here, the class seeks various forms of monetary relief, the class becomes less cohesive because of the need to examine individual damage claims. Id.


Citing Allison v. Citgo Petroleum Corp., the Magistrate Judge held, and we agree, that monetary damages are incidental only if they flow from liability to the class as a whole and are capable of determination by objective standards. If damages of the type sought here are to be awarded to members of the class, they must be determined on an individualized basis by a showing that the particular class member was entitled to a promotion or pay increase and did not receive it because of racial discrimination. That would also require a determination of when that discrimination occurred and what the salary differences were it would not be the same for everyone involved. These are not the type of damages that flow directly from liability to the class as a whole. Moreover, it would be unfair for those plaintiffs who have suffered the most severe discrimination for the longest period of time to have their damages divided equally among all class members. See Burrell v. Crown Central Petroleum, 197 F.R.D. 284, 289-90 (E.D. Tex. 2000).

Plaintiffs also seek punitive damages for members of the putative class. This would necessitate individualized proof of harm by each class member. In addition, they would have to show that the

-29-

> supervisor involved in any given decision acted with "malice or
> with reckless indifference to the federally protected rights" of that
> person. 42 U.S.C. § 1981a(b) (1) ; <u>Kolstad v. American Dental
> Ass'n</u>, 527 U.s. 526, 538 (1999) . The class member would also
> have to show how liability for such conduct could be imputed to
> the company and that such conduct was not contrary to the
> company's good faith efforts to comply with the law.  <u>Sikorsky at
> 16-21.</u>

In this case, as in <u>Sikorsky</u>, each back pay award is tied to one or more

individualized discriminatory employment decisions relating to compensation,

promotions, and performance evaluations which occurred over a period of several

years.

The Plaintiffs claims for money damages dominate this action, and require an

individualized approach to calculate.  This must preclude class certification.

The Plaintiffs have made a claim for back pay, compensatory damages and

punitive damages in their complaint.  In addition, each Plaintiff confirmed in her

deposition that this relief was sought.  While it is true that the Plaintiffs have

requested injunctive relief, it is apparent that the focus of the lawsuit is to recover

money damages.  Any award of money damages and/or punitive damages must be

calculated on an individual basis, and will not lend itself to class relief.

-30-

## IV. CONCLUSION

   Given the arguments stated above, the Defendant requests that class

certification be denied.

By
ANTHONY J. PALERMINO
**Their Attorney**
**945 WETHERSFIELD AVENUE**
**HARTFORD, CT**
**ct05651**