FILED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-----------------------------------------------------------X

Kendra (HEWITT) Morgan, Darlene WHALEY
and Ethel L. Wright

       Individually and as
       Class Representative,                    Civil Action No. 3:01 CV 2037 (MRK)
       Plaintiff,

                                          Memorandum in Reply to MDC's
      v.                                    Objection That Action
                                          Proceed as Class Action

THE METROPOLITAN DISTRICT
COMMISSION,
Defendant.

-----------------------------------------------------------X

I.      INTRODUCTION

      The Plaintiffs submit the following memorandum in response to the arguments made by the Defendant, Metropolitan District Commission ("MDC"), in its Memorandum in Support of Defendant's Objection to Class Certification, dated February 13, 2004 (hereinafter "Objection"). As much as feasible, the Plaintiffs will address the Defendant's arguments in the order in which they appear in the Objection.

II.     ARGUMENT

      A.      **Legal Standard Under Title VII and Section 1981**

      The Defendant begins its argument in opposition to the Plaintiffs' motion for class certification with a section entitled "the legal standard under Title VII and Section 1981." Though the arguments and cases within this section raise interesting issues, some of which may

1

be contested at a later stage of these proceedings, they are largely inapposite to the Plaintiffs' present motion. All but one of the cases cited involve individual plaintiffs, and none of the cases involve the question of whether a motion for class certification should be granted.

The Defendant first cites to the Supreme Court's decision in General Building Contractors Assn. v. Pennsylvania, 458 U.S. 375, 102 S. Ct. 3141, 73 L. Ed. 2d 835 (1982). Most notable about this decision in relation to the present motion is that the District Court's certification of the plaintiff class action was not being challenged. See, generally, id., 380.

The Defendant next cites to McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). Both of these cases involved individual defendants, not a class action. Although the Defendant relies upon McDonnell Douglas Corp., supra, 411 U.S. 802-04, for its explanation of the burden-shifting analysis for some labor discrimination cases, the Supreme Court's holding in that case expressly did not apply to class actions: "The critical issue before us concerns the order and allocation of proof in a private, non-class action challenging employment discrimination." (Emphasis added.) Id., 800. Given this language which defines the Supreme Court's holding and the fact that neither McDonnell Douglas Corp. nor Burdine involved a class action, it is clear that any reliance upon these cases with regard to the present motion is misplaced.

### B.     The Standard for Class Certification

The next section of the Defendant's Objection outlines the standard applicable for motions for class certification. In doing so, the Defendant cites to the Supreme Court's decision in General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 102 S. Ct. 2364, 72

L. ed. 2d 740 (1982). In this section discussing the Court's standard of review, the Defendant does not address the fact that "a motion for class certification is not an occasion for examination of the merits of the case." Caridad v. Metro-North Commuter Railroad, 191 F.3d 283, 291 (2d Cir. 1999), cert. denied, 529 U.S. 1107, 120 S. Ct. 1959, 146 L. Ed. 2d 791 (2000). The Defendant, however, appears to proceed under the impression that a motion for class certification is comparable to a motion for summary judgment and that statistical evidence proving discrimination is required for class certification. See Objection, pp. 18-19. This is not an accurate description of the legal standard for the present motion.

The Supreme Court's decision in General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, does not require that statistical evidence be provided by the plaintiff in order to prove that class certification is appropriate. Quite the contrary. The Supreme Court's decision contemplates instances where class certification might be appropriate with merely the pleadings. See id., 160 ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."). The Court will note that the plaintiff in Falcon was denied class certification, because his complaint failed to bridge the gap between an individual complaint of discrimination and a claim of class-wide discrimination. Id., 158.

The decision in Robertson v. Sikorsky Aircraft, Docket No. 3:97 CV 1216 (GLG) (D.Conn. Sept. 18, 2000), attached to the Defendant's Objection (Defendant's Exhibit C), is an example of why a motion for class certification is not the vehicle to offer statistical evidence

3

intended to prove the fact of a pattern of discrimination. The Plaintiffs respectfully disagree with the manner in which the Robertson Court reached its decision; rather than consider the statistical evidence as proof for whether there were common questions of law or fact, the Court criticized the use of statistical evidence in general. See id., 6-11. The Robertson Court went so far as to state that it was "troubled by the Caridad[, supra, 191 F.3d 283,] majority's belief that statistical evidence can in all situations detect racial discrimination in an employer's work force. See 191 F.3d at 292." Robertson, supra, 9. It is puzzling that the Defendant should attach this particular case to its Objection, and at the same time argue so strenuously as to the absence of any statistical evidence presented in the Plaintiffs' motion. See Objection, pp. 18-19, 22. Nevertheless, the Plaintiffs ask that the Court apply the standard of review established by the Second Circuit and the Supreme Court and determine that statistical evidence proving discrimination is not a *sine qua non* of class certification.

### C.    The Legal Requirements of Rule 23 (a)

The Defendant cites to the District Court's decision in Krueger v. New York Telephone Co., 163 F.R.D. 433 (S.D.N.Y. 1995), for its definition of typicality. The Plaintiffs do not dispute the applicability of the Krueger holding, as the District Court in Krueger properly determined that class certification was warranted. Nevertheless, the Plaintiffs ask that the Court also consider the following language from that decision: "Class certification ... is not an occasion for examination of the merits of the case. The Court should not resolve any material factual disputes in the process of determining whether plaintiffs have provided a reasonable basis for their assertions. ... Permitting a class certification proceeding to become a mini-trial on the merits is both unauthorized and unwise. * * * The issue here is whether, based upon the

4

pleadings and the extensive evidentiary record before the Court, including the affidavits and the results of substantial discovery, the plaintiffs have carried their burden of showing that each of the requirements of Rule 23 (a) have been met and that the action is maintainable under one of the subdivisions of Rule 23 (b)." (Citations omitted.) Id., 438.

### D.  Plaintiffs Have Met the Requirements of Rule 23 (a)

#### 1.  Numerosity

The Defendant argues that the Plaintiffs have failed to demonstrate that joinder of all effected Plaintiffs would be impracticable. In support of this argument, the Defendant attempts to point out errors contained in Exhibit A-1, the summary provided to the Court by the Plaintiffs. The Defendant states that "[t]he list is wrought with error, not supported by statistical evidence, and demonstrates the varied circumstances of each putative class member." Objection, p. 16.

The Court should note that the sole reason for the Plaintiffs' proffer of the list provided in Exhibit A-1 was to assist the Court in determining the approximate size of the proposed class. The Defendant is somewhat disingenuous in its protests as to the accuracy of the list. During discovery, the Plaintiffs requested that the Defendant provide the total number of minority (black and Hispanic) employees at the MDC according to which department they worked in. See Plaintiffs' First Set of Interrogatories, Interrogatory 4 [copy attached]. The Defendant's response was to send hundreds of pages of data containing, in part, employee names, job titles and race. Rather than submit such voluminous documents to the Court, the Plaintiff synthesized the data contained therein and produced a list from that data, which the

5

Defendant provided. Any dispute as to the accuracy of this list merely reflects upon the sufficiency of the Defendant's responses to discovery and not to any shortcoming in the Plaintiffs' proof in support of class certification.

The Court should further note that the Plaintiffs' estimate that the proposed class contains at least one hundred (100) members was a conservative one. See Plaintiffs' Memorandum, p. 3. Regardless of any errors which may have resulted from the summary of the documents provided by the Defendant, there appears to be no real argument as to the class size. For some reason, the Defendant places its argument as to the accuracy of Exhibit A-1 under the heading of "Commonality and Typicality." Nevertheless, the Defendant's own criticism of this list demonstrates that there are more than one hundred persons who fall within the class. See Objection, p. 16. It is unclear why it would be preferable to the Defendant that there be over one hundred individual lawsuits claiming, for instance, that the Defendant has failed to comply with its federal affirmative action obligations. Such a result, however, would not serve the interests of judicial economy, and the Court should find the numerosity requirement satisfied.

### 2. Commonality and Typicality

The Defendant analyzes whether there is commonality and whether there is typicality under the same heading, apparently treating these two questions as merging into one. See, generally, General Telephone Co. of Southwest v. Falcon, supra, 457 U.S. 158 n.13. The Plaintiffs demonstrated in their initial memorandum how the present case satisfies both commonality and typicality as separate and distinct issues. With this in mind, the Plaintiffs will confine their rebuttal to one facet of the Defendant's argument.

The Defendant makes much of the fact that "[t]he claims made by the Plaintiffs, as described in both their complaint and memorandum, demonstrate a different set of facts for each Plaintiff." Objection, p. 17. The Defendant's argument fails to take into account the fact that "Commonality does not mandate that all class members make identical claims and arguments, ... only that the gravamen of the Complaint is that the defendants discriminated against class members in the same general fashion. ... The mere presence of some asserted factual differences between class members is not a bar to commonality." (Citations omitted, internal quotation marks omitted.) Krueger v. New York Telephone Co., supra, 163 F.R.D. 439. Furthermore, the rule of typicality "does not require that the factual background of the named plaintiffs' case be identical with that of other members of the class, but that the disputed issue occupy essentially the same degree of centrality to the named plaintiffs claim as to that of other members of the proposed class." Id., 442.

The Defendant would point to the fact that there is an Oak, a Maple and a Pine standing before us as proof that there cannot be a forest behind them. Rather than focus on differences, however, the Court should see what is common to all within the proposed class.

### 3. Representatives Will Fairly Protect the Class

It does not appear that the issue of whether the named Plaintiffs meet the requirements for Rule 23 (a) (4), as established by the Second Circuit, is in dispute. Therefore, the Plaintiffs rely upon the arguments in their initial memorandum to the Court.

### E. Plaintiffs Have Met the Requirements of Rule 23 (b) (1) (A)

The present case qualifies for class certification under Rule 23 (b) (1) (A). As the Defendant continues to dispute this, however, the Plaintiffs will provide another example of

7

how "the prosecution of separate actions by ... individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class...." Fed. R. Civ. P. 23 (b) (1) (A).

One of the methods of discrimination which supervisors at the MDC utilize is promoting a white employee into an "acting" position when there is a vacancy. See Complaint, ¶ 9.dd. When a black employee is next in line for a position that becomes vacant, however, the rules change, and the black employee remains in her old position whether or not she is qualified to perform in an "acting" capacity. See Complaint, ¶ 9.bb. The Court should assume the possibility of a multiplicity of suits challenging this inconsistent practice. The plaintiffs could each seek injunctive relief challenging the discriminatory promotion practices of the MDC, as the Plaintiffs do in the present case. There are at least two potential forms of injunctive relief which would impose incompatible standards of conduct upon the MDC: 1) no employee is ever to be placed in an acting capacity when a vacancy arises; and 2) the next senior member of a department, regardless of skin color, is automatically placed in an "acting" capacity whenever there is a vacancy. Given the existence of just two separate actions by members of the class challenging this promotion practice, the MDC could be left with two contradictory orders: <u>never</u> put an employee in an "acting" capacity; <u>always</u> put an employee in an "acting" capacity.

### E.     **Plaintiffs Have Met the Requirements of Rule 23 (b) (2)**

The Defendant argues that the present case does not qualify for class certification pursuant to Rule 23 (b) (2). The Court may note that the Defendant promises that it will "argue

8

at length ... the Plaintiffs' claims for money damages dominate this action." Objection, p. 25. This promise, however, is never fulfilled. The Defendant argues that "it is <u>apparent</u> that the focus of the lawsuit is to recover money damages." (Emphasis added.) Objection, p. 29. The Defendant's argument appears to be that an award of money damages will require an individualized determination for each member of the class, and, therefore, the claims for money damages dominate this action. The Defendant's argument would preclude a claim for monetary damages, whether incidental or dominant, in every case which seeks certification pursuant to Rule 23 (b) (2). However, a Rule 23 (b) (2) class action does not require a plaintiff to forego all claims for monetary relief; see, generally, Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir. 1998); but rather the claims for monetary relief should not be predominant over the claims for declaratory or injunctive relief.

The Plaintiffs' Complaint seeks to end a pattern of conduct, of which the management of the MDC has been aware for several years and yet done nothing to remedy. The Plaintiffs seek to force the Defendant to comply with affirmative action requirements established by federal law. The Plaintiffs seek the empowerment of an independent Affirmative Action Officer at the MDC. The Plaintiffs seek an end to a job posting scheme that is inconsistently and discriminatorily enforced. The Plaintiffs seek an independent evaluation of the Defendant's discriminatory practices and policies in order to prevent problems into the future. "[E]ven in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought[, and, furthermore,] the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits." <u>Robinson v. Metro-North Commuter R.R. Co.</u>, 267 F.3d

9

147, 164 (2d Cir. 2001), cert. denied, 535 U.S. 951, 122 S. Ct. 1349, 152 L. Ed. 2d 251 (2002).

Therefore, the present case qualifies for class certification pursuant to Rule 23 (b) (2).

**IV.   CONCLUSION**

The Plaintiffs have demonstrated that the present case satisfies the requirements of Rule 23. Therefore, the Court should enter an Order that class certification is appropriate.

Respectfully submitted,
THE PLAINTIFFS

By: *Stuart Brown*
Robert W. Heagney (ct05658)
Stuart E. Brown (ct24659)
Hassett & George, P.C.
555 Franklin Avenue
Hartford, CT 06114
(860) 296-2111
Fax: (860) 296-8494

## CERTIFICATION

I hereby certify that a copy of the foregoing has been mailed this 25th day of February, 2004 to the following counsel of record:

Anthony J. Palermino, Esq.
Law Offices of Anthony J. Palermino
945 Wethersfield Avenue
Hartford, CT 06114

*Stuart Brown*
~~Robert W. Heagney~~
Stuart E. Brown

11

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------X

Kendra HEWITT, Darlene WHALEY
and Ethel L. Wright

    Individually and as
    Class Representatives,
    Plaintiffs,

        v.

THE METROPOLITAN DISTRICT
COMMISSION,
Defendant.

Civil Action No. 3:01cv2037(SRU)

December 7, 2001

-------------------------------------------------------X

## PLAINTIFFS' FIRST SET OF INTERROGATORIES

Comes now Plaintiffs, by counsel, and serves the following interrogatories to be answered separately and fully under oath serve upon you herewith the following interrogatories to be answered separately and fully under oath, pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure. Your answers are to be served upon Robert W. Heagney, Gilman & Marks, Two Riverview Square, East Hartford, Connecticut 06108, within thirty (30) days from service hereof.

### I. DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions shall apply to these interrogatories:

A.    **You, your or yourself**: With reference to these interrogatories, the terms "you, your and/or yourself" refer to The Metropolitan District, each of their present and former agents, representatives and attorneys, and each person acting or purporting to act on their behalf.

B.  **Person**: As used herein, the term "person" means any natural individual in any capacity whatsoever or any entity or organization, including divisions, departments, and other units therein, and shall include, but not be limited to, a public or private corporation, partnership, joint venture, voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau or department.

C.  **Document**: As used herein, the term "document" means any medium upon which intelligence or information can be recorded or retrieved and includes, without limitation, the original and each copy, regardless of origin and location, of any book, pamphlet, periodical, letter, or memorandum, including any memorandum or report of a meeting or conversation, invoice, bill, order, form, receipt, financial statement, accounting entry, diary, calendar, telex, telegram, cable, report, record, contract, agreement, study, handwritten note, draft, working paper, chart, paper, print, drawing, sketch, graph, index, list, tape, photograph, microfilm, data sheet or data processing card, or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced, which is in your possession, custody or control or which was but is no longer in your possession, custody or control.

D.  **Communication**: As used herein, the term "communication" means any oral or written utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, conversations,

2

dialogues, discussions, interviews, consultations, agreements, and other understandings between or among two (2) or more persons.

E.  **Identification**: As used herein, the terms "identification," "identify," or "identity," when used in reference to (a) a natural individual, require you to state his or her full name, residence and business addresses and telephone numbers; (b) a corporation, require you to state its full corporate name and any names under which it does business, its state of incorporation, and the address and telephone number of its principal place of business; (c) a business, require you to state the full name or style under which the business is conducted, its business address or addresses and telephone number; (d) a document, require you to state the number of pages and the nature of the document (e.g., letter or memorandum), its title, its date, the name or names of its authors and recipients, and its present location and custodian; (e) a communication, require you, if any part of the communication was written, to identify the document or documents which refer to or evidence communication, and to the extent that the communication was not written, to identify the persons participating in the communication and to state the date, manner, place and substance of the communication.

## II. INTERROGATORIES

1) For all MDC employees' evaluations (except Management employees) since January 1997, list the composite performance evaluation rating for each employee, by race, including Hispanic-Americans:

A) Give date of each employee evaluation;
B) Identify whether the employee objected to the evaluation;

3

    C)    Give the individual and overall ratings for each category in the following:

        1)    Job knowledge and skills dimension;
        2)    Job management dimension;
        3)    Productivity/Quality of work dimension; and
        4)    People management dimension.

**RESPONSE**

    See attached documents.

2) For each job evaluation listed in response to Interrogatory #1, identify if the evaluation was reviewed by the Personnel Department and whether any change to the evaluation was recommended and/or made by the persons preparing the evaluation or by the Personnel Department.

**RESPONSE**  The standard procedure for the Human Resource Department is to merely review to determine completeness; H.R. does not change or modify but provides advice if the evaluations are not completed, do not make sense, and/or have some similar type of defect. It is not the function of H.R. to change or to do the evaluation.

3) For each Division, Department or work area, identify the employees in each level of responsibility within the MDC, identify the total number of employees and the number/percent of minority (black and Hispanic) employees in said levels of responsibility. For example: 1) Laborer; 2) Group Leader; 3) Foreman; 4) Supervisor; 5) Manager; 6) Director.

**RESPONSE**

    See attached information.

4

4) For each Division or Department/work area, identify a) the total number of employees and b) the number of minority (black and Hispanic) employees;

RESPONSE

    See attached information.

5) For the period of January 1996 to the present, identify each MDC employee, including whether the individual is a minority (black and Hispanic), who has received or requested retroactive pay after receiving a job upgrade or promotion of any kind or nature, and list the period of time (weeks, months, years) for which the employee requested retroactive pay, and the period of time for which retroactive pay was awarded.

RESPONSE

    See attached informaton

6) For all employees given temporary upgrade positions during the period of January 1996 to the present, please identify:

    A) The nature of the position;

    B) The employee's actual pay grade;

    C) The race (black and Hispanic) of the employee;

    D) Whether the employee applied for the position when posted or hired; and

    E) Whether the employee received the position.

5

RESPONSE

      See response to paragraph 9 in Request for Production.

7)     For all employees who applied for positions from January 1996 to the present, identify for each position applied for, which employees were informed they did not meet the minimum job requirements and identify such employees by race (black and Hispanic).

RESPONSE

      See attached Notice of Vacancies 1996 through present.

8)     For each employee upgraded or promoted from January 1996 to the present, please identify whether the job received was posted, whether any other employee was interviewed, whether other employees were given consideration for said position, whether applicants were minorities (black and Hispanic), and whether the successful employee was a minority (black and Hispanic).

RESPONSE

      See attached Notice of Vacancies 1996 through present.

6

Case 3:01-cv-02037-MRK   Document 37   Filed 02/26/2004   Page 17 of 19

9) For each employee receiving a promotion to a position for which no job posting was made between January 1996 to the present, set forth the policies which allowed the promotion without posting and identify the Manager who requested the position to be filled without posting.

RESPONSE

RESPECTFULLY SUBMITTED,

PLAINTIFFS, KENDRA HEWITT DARLENE WHALEY and ETHEL L. WRIGHT

By_____
Robert W. Heagney
Their Attorney
GILMAN & MARKS
Two Riverview Square
East Hartford, CT 06108
(860) 282-0301
ct 5658

7

## CERTIFICATION

I hereby certify that the foregoing Interrogatories have been mailed this 7th day of December, 2001 to the following counsel of record:

Anthony J. Palermino, Esq.
Law Offices of Anthony J. Palermino
945 Wethersfield Avenue
Hartford, CT 06114

_____
Robert W. Heagney

STATE OF  CONNECTICUT  )
                       )  ss: HARTFORD
COUNTY OF  HARTFORD    )

Personally appeared before me this 21st day of May, 2002, ROBERT J. ZAIK, as MANAGER OF LABOR RELATIONS of The Metropolitan District Commission, who being first duly sworn according to the law, made oath that the answers contained in the foregoing answers to interrogatories are true of his/her own personal knowledge, except those specifically identified as being upon information and belief, and as to those, (s)he verily believes them to be true.

_____        _____
                                        Betty B. Ficacelli
                                        Notary Public

My Commission Expires: 3/31/04

BETTY B. FICACELLI
*NOTARY PUBLIC*
MY COMMISSION EXPIRES MAR. 31, 2004

8